40 Cal.Rptr.3d 687 (2006)
137 Cal.App.4th 941
In re BARBARA R. et al., Persons Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Terri R., Defendant and Appellant.
No. D046405.
Court of Appeal, Fourth District, Division One.
March 20, 2006.
*689 Susan Bookout, under appointment by the Court of Appeal for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.
Andrea Renee St. Julian, San Diego, for Minors.
*688 HUFFMAN, Acting P.J.
Terri R. appeals the judgments terminating her parental rights to her children, Barbara R. (Jade) and Kelsy N. under Welfare and Institutions Code section 366.26.[1] Terri contends her rights to maintain her parental status to Jade under the Indian Child Welfare Act (ICWA), 25 United States Code section 1901 et seq., were violated by the lack of a current judicial finding that Jade's return to parental custody would be detrimental to her. She argues that, due to the children's divergent interest, Jade's attorney was subject to conflict and provided Jade with ineffective assistance of counsel.
We requested supplemental briefing from the parties whether Jade should have been appointed a guardian ad litem to protect any rights or interests to which she may be entitled as a member of the Sycuan Band of the Kumeyaay Nation. Terri argues the court had a sua sponte duty under California Rules of Court,[2] rule 1438(g)(3)[3] to appoint a guardian ad litem. She contends an investigation into tribal benefits would provide "a clear understanding of the situation and needs of the child" as required of a guardian ad litem by rule 1448(d)(1).
We conclude Terri did not show the court's finding under 25 United States Code section 1912(f) was stale. We also conclude minors' counsel was not subject to conflict. Because counsel effectively performed his duties as required by section 317, subdivisions (c) and (e), the court had no obligation to appoint a separate guardian ad litem or take other action under rule 1438(g). We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On March 7, 2005, the juvenile court terminated parental rights to Jade, born May 1994, and to Kelsy, born September 2001, freeing the children for adoption by Kelsy's paternal grandmother and her husband (Grandparents). Jade's alleged father was Michael M.,[4] a member of the *690 Sycuan Band of the Kumeyaay Nation. Jade was also an enrolled member of the tribe. The Sycuan Band of the Kumeyaay Nation did not intervene in the proceedings.
Kelsy was not an Indian child. Her presumed father was Kevin N.[5]
In July 2004, Terri and Kevin filed proceedings in mandate challenging the juvenile court orders terminating their reunification services and setting a hearing under section 366.26. Because the factual and procedural background of the case is set forth in detail in that opinion, we review it only briefly here. (See Terri R. et al. v. Superior Court, 2004 WL 1490908 (July 6, 2004, D043906) [nonpub. opn.].)
In October 2002, eight-year-old Jade and one-year-old Kelsy were removed from parental custody after Terri and Kevin had a violent confrontation that left the family home in shambles. The children were not home during the altercation; however, upon investigation, the San Diego County Health and Human Services Agency (the Agency) learned the children had been exposed to other incidents of domestic violence and Terri and Kevin had histories of substance abuse problems.
In October 2002, the Agency filed petitions under section 300, subdivision (b) alleging Jade and Kelsy were at substantial risk of serious harm as a result of domestic violence between Terri and Kevin. The parties submitted to jurisdiction. In January 2003, after a contested disposition hearing, the court placed the children with Grandparents over Terri's objections. Terri believed Grandparents would not facilitate reunification efforts. Although Jade's placement with a nonrelative was not a placement preference under ICWA, 25 United States Code section 1912(f), the Sycuan Band of the Kumeyaay Nation did not object.
In October and December 2002 and January 2003, Terri tested positive for methamphetamine. The court ordered her to participate in the Substance Abuse Recovery Management System (SARMS). Terri did not attend SARMS and was terminated from the program. Terri's visits with the children were marred by her anger at the social workers and Grandparents. Terri's (and Kevin's) verbal abuse and foul language frightened Jade. Jade said she did not want to visit Terri and Kevin because they were always angry. In January 2003 the court suspended visitation.
In August 2003, shortly before the conclusion of the contested six-month review hearing, Terri reenrolled in SARMS. She started counseling, enrolled in a parenting class and domestic violence program and continued out-patient substance abuse treatment. Terri and Kevin were no longer together. The court reauthorized supervised visitation. The children enjoyed their visits with Terri. Indian child welfare expert, Lydia Rochfort, recommended continued out-of-home placement until Jade could be reunified with Terri. Although the Agency recommended the case be referred for a section 366.26 hearing (permanency hearing), the court found Terri made some progress toward reunification and continued services.
During the next six-month review period, Terri's visitation with the children was positive. Jade expressed a desire to live with Terri. Terri continued therapy, finished a parenting class and completed an out-patient treatment program. However, after she tested positive for opiates in *691 September 2003, Terri refused to test with SARMS. In December 2003 Terri had a physical altercation with a sister and brother-in-law. That same month a visit with the children was cancelled after Terri displayed hostility toward the social worker supervising the visit. In April 2004 Terri was discharged from a domestic violence program due to excessive absences.
At the 12-month review hearing in March 2004, the Agency asked the court to terminate reunification services and set a permanency hearing under section 366.26. For Kelsy, the Agency recommended termination of parental rights and adoption by Grandparents. For Jade, out of respect for the tribe's opposition to adoption and "to preserve her Indian rights," the Agency recommended guardianship with Grandparents.
The Sycuan Band of the Kumeyaay Nation opposed adoption because Jade would lose her culture and because, as a tribal member, she was entitled to significant benefits, including a monthly financial stipend, funding for higher education, medical and dental coverage, and a home on the reservation. Jade's tribal benefits appeared to include a monthly stipend of $1,500 placed in trust until age 18, an increased monthly stipend after age 18, free higher education, housing on the reservation, and medical and dental coverage. In her December 2003 declaration, Rochfort recommended the court establish a guardianship for Jade with Grandparents.
In March 2004, at the conclusion of the contested 12-month review hearing, the court found active efforts were made to provide remedial services to reunite Jade with her family and those efforts were unsuccessful. (25 U.S.C. § 1912(f).) The court found beyond a reasonable doubt that returning the children to parental custody would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being. (See § 366.21, subd. (f); rule 1439(m).) The court terminated services and scheduled a permanency hearing.
Social workers supervising visitation noticed a decline in Jade's interaction with Terri. Jade began to express a desire to be adopted by Grandparents. She called them "mom" and "dad." She did not want to visit Terri. In August 2004, at Jade's request, the court temporarily suspended Terri's visitation with Jade. At a special hearing in September 2004, Jade testified she was angry with Terri "because she didn't try hard to get us back." Jade reported she suffered from stomachaches and headaches before and after visits. She was afraid of Terri's temper. The court suspended Terri's visitation, finding it was detrimental to the children.
On January 11, 2005, the Agency changed Jade's permanency recommendation from guardianship to adoption. The adoptions social worker, Jodi Squires, recommended guardianship because she did not want to "cause [Jade] to lose her tribal benefits." However, Squires changed her recommendation when she learned there was a possibility Jade could remain a member of the tribe were parental rights terminated.
On February 3, 2005, Terri filed a section 388 petition asking the court to vacate the section 366.26 hearing and to reinstate reunification services and visitation. She requested the court place the children with her sister, whose home had been approved for placement. Terri stated she had maintained her sobriety since October 2003 and had not been in a relationship with Kevin for two years. She asserted the children's best interests were served by a modification of prior orders because Grandparents were unsuitable custodians, manipulated the children against her, and had no biological or tribal ties to Jade. The court *692 denied Terri an evidentiary hearing on the petition.
At the permanency hearing, social worker Squires testified she originally recommended the court establish a guardianship for Jade because she believed the Agency was required by law to choose a permanency plan other than adoption if the tribe objected. Jade felt strongly about wanting Grandparents to adopt her. In Squires's experience, it was unusual for a ten year old to be that clear about her desire to be adopted. Squires believed any financial benefit Jade might receive from continued tribal membership would be outweighed by the emotional security of adoption.
Jade testified she wanted Grandparents to adopt her because she liked them. She wanted to live with her sister and Grandparents.
In her testimony, Grandmother said Jade did not understand why her sister could be adopted and she could not. After discussions with Jade, Grandparents decided adoption was better for her despite any loss of financial benefits. Grandmother understood Jade might lose her status as a registered member of the tribe if adopted and could reapply for membership at age 18. Grandparents never took Jade to a Sycuan cultural event; they would allow Jade to decide whether to maintain her connection with the tribe.
Carol Banegas, a social worker with the Southern Indian Health Council (SIHC), testified she recently reviewed the case and consulted with Southern Indian Health. The tribe remained opposed to adoption. Its opposition was not solely based on financial considerations. The tribe was concerned Jade would lose her culture if adopted. Banegas was aware Jade was eligible for trust monies and other benefits, but she did not have specific information concerning Jade's continued eligibility if parental rights were terminated. There was some indication Jade could reapply for tribal membership at age 18 and regain tribal benefits if readmitted.
The court suggested the parties provide the court an offer of proof stipulating to "exactly what this child is entitled to." Minors' counsel objected to the admission of any evidence concerning Jade's tribal interests and rights and stated he would not stipulate to such an offer of proof. He stated the existence of financial benefits was not relevant to the issues raised in a permanency hearing under section 366.26.
The court found it was likely both children would be adopted. Grandparents had become the children's surrogate parents and the children were bonded with them. The court determined that no exceptions applied under section 366.26, subdivision (c)(1), and terminated parental rights.

DISCUSSION
Terri's appeal is based solely on alleged ICWA violations. Kelsy is not an Indian child within the meaning of ICWA. Terri does not make any argument to support a theory of error as to Kelsy. Therefore, we treat her appeal as to Kelsy as abandoned. (Rule 14(a); Estate of Randall (1924) 194 Cal. 725, 728-729, 230 P. 445, Berger v. Godden (1985) 163 Cal.App.3d 1113, 1119-1120, 210 Cal.Rptr. 109.)

I
Terri argues the juvenile court erred when it did not renew the evidentiary finding required by 25 United States Code section 1912(f) at the permanency hearing. Before terminating parental rights to an Indian child, ICWA requires the court find by evidence beyond a reasonable doubt that continued parental custody would create a substantial risk of *693 detriment to the safety, protection, or physical or emotional well-being of the child (ICWA detriment finding). (25 U.S.C. § 1912(f); rule 1439(m).) This finding must be supported by the testimony of an Indian child welfare expert. (Ibid.)
In In re Matthew Z. (2000) 80 Cal.App.4th 545, 95 Cal.Rptr.2d 343 (Matthew Z.), we concluded a California court must make the finding required by ICWA, 25 United States Code section 1912(f), before it terminates parental rights. "The finding generally should be made at the final review hearing at which a section 366.26 hearing is scheduled. If this finding was made, a court need not readdress the issue at the [permanency] hearing, unless the parent presents evidence of changed circumstances or shows the finding was stale because the period between the referral hearing and the section 366.26 hearing was substantially longer than the 120-day statutory period." (Id. at pp. 554-555, 95 Cal.Rptr.2d 343.) The court's finding must be supported by the testimony of an Indian child welfare expert. (25 U.S.C. § 1912(f).)
Terri contends the ICWA detriment finding was made stale by the substantial period of time between the March 2004 12-month review hearing (referral hearing) and the February/March 2005 permanency hearing.[6] The Agency contends Terri did not present sufficient evidence to show changed circumstances and did not show the evidence supporting the ICWA detriment finding was stale. The Agency asserts the court did not erroneously terminate parental rights because substantial evidence supports a current ICWA detriment finding.
We review the court's findings made pursuant to ICWA for supporting evidence which is "reasonable, credible and of solid value." (In re Michael G. (1998) 63 Cal.App.4th 700, 715, 74 Cal.Rptr.2d 642.) We review the record in a light most favorable to the judgment and uphold the trial court's finding unless it can be said that no rational factfinder could reach the same conclusion. (Id. at pp. 715-716, 74 Cal.Rptr.2d 642.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the court's finding or order. (In re L.Y.L. (2002) 101 Cal.App.4th 942, 947, 124 Cal.Rptr.2d 688; In re Geoffrey G. (1979) 98 Cal.App.3d 412, 420, 159 Cal.Rptr. 460.)
Terri raises a valid concern about the length of time between the March 2004 ICWA detriment finding and the February/March 2005 permanency hearing. In Matthew Z., we held that a five-month period between the referral and permanency hearings was not substantially longer than the 120-day statutory period. (Matthew Z., supra, 80 Cal.App.4th at pp. 554-555, 95 Cal.Rptr.2d 343.) Here, obviously, the 11-month period between the referral and permanency hearings was substantially longer than the preferred 120-day statutory period. However, reversal is not automatic; the burden remains on the parent to show the finding was stale. (Id. at p. 555, 95 Cal.Rptr.2d 343.)
*694 In a declaration dated December 11, 2003, Indian child welfare expert Rochfort stated active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of this family and Indian child. She opined that parental custody was likely to result in serious emotional or physical damage to Jade due to Terri's and Kevin's lifestyle.
Terri contends she showed changed circumstances in that she maintained her sobriety for 18 months and no longer had a relationship with Kevin. She completed a drug rehabilitation program in November 2003. Terri argues the initial reasons for the dependency no longer existed.
The Agency points out Terri did not comply with the drug testing component of her case plan after she tested positive for opiates in September 2003. The Agency also contends that, although Terri was no longer involved with Kevin, the underlying issue of deficiencies in anger management affected her relationships as recently as December 2003, when she had a physical altercation with her sister and brother-in-law. In April 2004 Terri was discharged from a domestic violence program with 25 out of 52 sessions remaining due to excessive absences from the program.
We review the record in a light most favorable to the judgment. (In re Michael G., supra, 63 Cal.App.4th at p. 715, 74 Cal.Rptr.2d 642.) The burden of proof is on the parent to show changed circumstances. (Matthew Z., supra, 80 Cal.App.4th at p. 555, 95 Cal.Rptr.2d 343.) Despite signs of improvement in her ability to maintain her sobriety, Terri did not comply with the drug testing component of the case plan. Terri had a history of resorting to physical altercation and her agitated behaviors were often seen as threatening. Jade was adversely affected by Terri's anger. Terri did not complete a domestic violence program. A court could reasonably conclude Terri did not show a change in circumstances sufficient to call into question the continuing validity of the ICWA detriment finding.
Even were we to assume Terri satisfactorily resolved the conditions on which Rochfort's December 2003 conclusions were based, substantial evidence supports the court's finding that continued parental custody presented a substantial risk of detriment to Jade's emotional well-being. (25 U.S.C. § 1912(f).) By July 2004 the effect of Terri's angry outbursts during visitation made Jade anxious and afraid. Jade reported physical ailments before and after visitation. She asked that visitation stop and insisted on testifying against her mother in court. In November 2004 Jade refused to participate in a court-ordered bonding study with Terri. In February 2005 she told the social worker Terri scared her. In March 2005 Jade testified she was mad at her mother and did not want to see her. The court's findings that visitation with Terri was emotionally detrimental to Jade are fully supported by the record.
Terri realized that Jade's immediate return to her custody was not possible. In her section 388 petition, Terri requested an additional period of reunification services and visitation. Thus, she implicitly conceded the current parent-child relationship was detrimental to Jade.
Furthermore, Indian child welfare social worker Banegas reviewed the case record and spoke with Jade's therapist and the Agency's Indian unit shortly before the permanency hearing. Banegas contacted the tribal office approximately three months before the hearing. At the referral hearing, the Indian social services agency, SIHC, recommended guardianship for Jade.
*695 We conclude the ICWA detriment finding was not stale. Terri's relationship with Jade deteriorated during the period of time between the referral hearing and the permanency hearing. An Indian child welfare expert recently reviewed the case record, obtained current information concerning Jade and did not change the earlier recommendation for permanent out-of-home placement. The record supports the court's finding beyond a reasonable doubt that continued parental custody presented a substantial risk of detriment to Jade's safety, protection, or physical or emotional well-being. (25 U.S.C. § 1912(f).) Error, if any, was harmless.

II
Terri contends that, due to the siblings' divergent interests, minors' counsel was subject to conflict and provided Jade with ineffective assistance by not investigating and protecting her tribal benefits. Terri asserts she has standing to raise the issue of ineffective assistance of minors' counsel because counsel's deficient performance impacted her interest in maintaining her parental rights.
The Agency asserts Terri forfeited this issue by not raising it at trial. However, our review of the record shows that Terri told the court that minors' counsel was "in a conflicting position." Terri opposed any action that would result in Jade's loss of tribal benefits and expressed concern that Jade's interests in her "Indian rights and benefits" were not being protected. The issue is not forfeited on appeal.
The Agency challenges Terri's standing to appeal this issue. Generally, a parent who is an aggrieved party may appeal a judgment in a juvenile dependency matter. (In re Frank L. (2000) 81 Cal.App.4th 700, 703, 97 Cal.Rptr.2d 88.) To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision. (In re Carissa G. (1999) 76 Cal.App.4th 731, 734, 90 Cal.Rptr.2d 561.) We liberally construe the issue of standing and resolve doubts in favor of the right to appeal. (Ajida Technologies, Inc. v. Roos Instruments, Inc. (2001) 87 Cal.App.4th 534, 540, 104 Cal.Rptr.2d 686.)
Here, action taken to protect or pursue the interests and rights of the child under rule 1438(g) may include the filing of a section 388 petition seeking reconsideration of an order setting a section 366.26 hearing on the basis of new evidence or changed circumstances. (Rule 1438(g)(1), (3); see §§ 385, 388.) Such action has the potential to alter the determination of the child's best interests and recommended permanency plan, affecting a parent's interest in his or her legal status with respect to the child. (See In re L.Y.L., supra, 101 Cal.App.4th 942, 950-951, 124 Cal.Rptr.2d 688.) We conclude Terri has standing to raise this issue on appeal.
Under section 317, subdivision (c), the primary responsibility of minor's counsel is to advocate for the protection, safety, and physical and emotional well-being of the child. Minor's counsel is also charged with the duty to "investigate the interests of the child beyond the scope of the juvenile proceeding and report to the court other interests of the child that may need to be protected by the institution of other administrative or judicial proceedings." (§ 317, subd. (e); rule 1438(g)(2); see In re Josiah Z. (2005) 36 Cal.4th 664, 683, 31 Cal.Rptr.3d 472, 115 P.3d 1133 ["`It is the duty of the guardian and the attorney to protect the rights of the minor....'"].)
The court should initially appoint a single attorney to represent all siblings in a dependency case unless there is an actual conflict of interest or a reasonable likelihood that an actual conflict of interest *696 would develop. (In re Celine R. (2003) 31 Cal.4th 45, 58, 1 Cal.Rptr.3d 432, 71 P.3d 787.) After the initial appointment, the court should relieve an attorney from representing multiple siblings only if an actual conflict of interest arises during the proceedings. (Ibid.) According to the Advisory Committee comment to rule 1438, "Attorneys have a duty to use their best judgment in analyzing whether, under the particular facts of the case, it is necessary to decline appointment or request withdrawal from appointment due to a purported conflict of interest." (Advisory Com. com. (2006), 23, pt. 3, West's Ann. Rules of Court (2006 supp.) foll. rule 1438, p. 40.)
In this case, there is no basis to allege a conflict of interest on the part of the minors' counsel. Jade and Kelsey did not have adverse interests. (See § 366.26, subd. (c)(1)(E); In re Celine R., supra, 31 Cal.4th at p. 57, 1 Cal.Rptr.3d 432, 71 P.3d 787.) A conflict arises where minor's counsel seeks a course of action for one child with adverse consequences to the other. Here, no such conflict existed. Grandparents were committed to adopting both children. By the time the permanency hearing was concluded, they had been the children's caretakers almost two-and-a-half-years. Three-year-old Kelsey knew no other home. Jade was deeply emotionally invested in being adopted by Grandparents. Jade and Kelsey were attached to each other. The social worker opined they would be "lost without each other." The permanency of adoption would ensure the children would be raised together and the sibling relationship would remain intact. Thus, we conclude the children's interests were not adversarial and minors' counsel was not subject to conflict.
In addition, there is no basis to conclude that minors' counsel provided Jade with ineffective assistance of counsel. There is no doubt minors' counsel performed his duties under section 317, subdivision (c) zealously and effectively. After proper investigation, minors' counsel determined adoption by Grandparents was in Jade's best interests. Jade clearly expressed her desire to be adopted by Grandparents. They had become her surrogate parents. Grandparents were her sister's prospective adoptive parents. Minors' counsel concluded that any consideration of financial benefits was not relevant to a determination whether Jade was adoptable and whether any defined statutory exceptions precluded termination of parental rights. (See § 366.26, subd. (c)(1).)
We review the record in a light most favorable to the judgment and uphold the trial court's finding unless it can be said that no rational factfinder could reach the same conclusion. (In re Michael G., supra, 63 Cal.App.4th at p. 715-716, 74 Cal.Rptr.2d 642.) On this record, we infer that minors' counsel properly performed his official duty under section 317, subdivision (e) to investigate other interests of the child beyond the scope of the juvenile proceeding. (See Evid.Code, § 664.) Minors' counsel told the court, "When we get into the issue of money, ... we open Pandora's Box at this point because we know none of the evidence is going to show there is an absolute regard to money. Everything from this point in Jade's life is speculative." We conclude minors' counsel acted within his statutory obligations when he determined Jade's interests in tribal membership did not require protection. Therefore, he was not required to report those interests to the court. (See § 317, subd. (e); rule 1438(g)(2).)
Even had counsel notified the court of Jade's interest in tribal benefits, the court may have reasonably determined further action on behalf of the child was not required. (See rule 1438(g)(3).) Terri asserted *697 adoption would divest Jade of tribal benefits; however, neither she nor any other party presented evidence the tribe would disenroll Jade were she adopted. The tribe opposed adoption but did not seek to intervene in the proceedings. Although the tribal chairman could answer questions regarding Jade's tribal membership, he did not return telephone calls from either the Agency social worker or the SIHC Indian child welfare expert.
The court's obligation to protect Jade's rights to tribal benefits was made more tenuous by the deference due the tribe as a sovereign nation. State courts have no power to intervene in tribal matters. (Lamere v. Superior Court (2005) 131 Cal.App.4th 1059, 1061, 1068, 31 Cal.Rptr.3d 880.) Each tribe has the right to define its own membership for tribal purposes. (Santa Clara Pueblo v. Martinez (1978) 436 U.S. 49, 72, fn. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106; see rule 1439(g)(1).) A tribe may change its membership ordinances at any time. (See Lamere, supra, at pp. 1061, 1063, 31 Cal.Rptr.3d 880.) Thus, Jade's interest in future tribal benefits, if any, is not enforceable by state courts.
The Agency and minor's appellate counsel also point out that were termination of parental rights to result in the loss of Jade's interests in and rights to tribal benefits, there is no statutory mechanism that permits the court to consider those interests when it selects the child's permanency plan under section 366.26. (In re Carl R., Jr. (2005) 128 Cal.App.4th 1051, 1069-1071, 27 Cal.Rptr.3d 612.) There is no general best interest exception to termination of parental rights under section 366.26. "[T]he court must consider the best interests of the child only in the context of whether one of the exceptions in section 366.26, subdivision (c)(1)(A) through (E) applies." (In re Carl R., Jr., supra, at p. 1070, 27 Cal.Rptr.3d 612.)
We can find no exception that would preclude termination of parental rights in this case. Jade did not have a beneficial relationship with either parent,[7] she was not yet 12 years old (and did not object to termination of parental rights),[8] she was not in a residential treatment facility,[9] she was living with extended family members who were willing to adopt her[10] and there would be no substantial interference with the sibling relationship in the event the court terminated parental rights.[11] Error, if any, was harmless.
Based on their assessment of Jade's needs and desires, Grandparents decided that adoption was in Jade's best interests. Grandparents made this decision knowing *698 they would assume financial responsibility for her care and education. The social worker assumed adoption meant the loss of Jade's tribal benefits and determined Jade's interests in the emotional security and permanency of adoption outweighed any loss of financial interests. Each reached this conclusion only after repeated evaluation of Jade's circumstances, including consideration of her expressed wishes. (See § 366.26, subd. (h)(1).) Minors' counsel conducted an independent investigation and concluded Jade's financial interests were not certain and, in any event, were not relevant to a permanency hearing.
After carefully considering the evidence and legal arguments, the court found Jade's best interests were met by adoption. The trial court's findings will be upheld unless it can be said that no rational factfinder could reach the same conclusion. (In re Michael G., supra, 63 Cal.App.4th at p. 715-716, 74 Cal.Rptr.2d 642.) We cannot substitute our view of the significance of tribal financial benefits, if any, for the sound judgment of the court.

DISPOSITION
The judgments are affirmed.
I CONCUR: McDONALD, J.
BENKE, Acting P.J.
I dissent.
In arguing against clarification of Indian benefits and rights, Barbara Jade R.'s (Jade's) attorney and guardian ad litem (counsel) abandoned his role as the minor's advocate. In addition, I believe the findings required by Indian Child Welfare Act (ICWA) (25 U.S.C. § 1912(f)) were too stale to be used as the basis of termination of parental rights.

1. Counsel should have explored and clarified Jade's Indian rights and benefits before parental rights were terminated.

The Sycuan Band of the Kumeyaay Nation (Tribe) opposes Jade's adoption. It favors guardianship because it believes Jade would lose her tribal identity and because as an enrolled member she has significant tribal benefits. Those benefits include a monthly stipend of $1,500 to be placed in a trust until age 18, an increased monthly stipend after age 18, a free higher education, housing on reservation land, and lifetime medical and dental coverage. At the time of the hearing there were unanswered questions with respect to what benefits Jade may already have, whether she stands to lose benefits if adopted, and whether Jade can in fact get any lost benefits back after the age of 18.
Carol Banegas, the social service worker representing the Southern Indian Health Council, testified she was assigned the case for only three months and indicated she would still have to check on whether any "windows" of eligibility might close for Jade. She was still waiting for a response from the Tribe on how Jade's trust monies might be affected and whether Jade would lose her membership in the Tribe if she were adopted. She did not check on whether there were back arrearages of trust money due to Jade. In these matters Ms. Banegas acknowledged the importance of directly contacting the tribal chairman to clarify the position of the Tribe but at the time of the hearing she had not done so. She filed no report with respect to any findings related to Jade's relationship to the Tribe. She did not form any conclusions and offered none with respect to what was in Jade's best interests as an Indian child. As the court observed, she did not personally know much and what *699 information she possessed was secondhand.
Adoption social worker Jodi Squires testified Jade's tribal membership "would still be there when she is 18" (italics added), but also that Jade "could possibly still have those rights" (italics added). For these conclusions she relied on discussions with Ms. Banegas. When asked if her recommendation would change if she found out that Jade's rights and benefits, even if they reached a sum of $200,000, would be terminated, she responded: "No. I think that it's fine." Her reason for supporting such a termination was that the need and benefits of adoption outweigh Jade's Indian interests.
For me, the important question is not whether Jade's rights as an Indian child outweighed her right to the security of adoption. A secure adoptive home is critical. The important question is whether Jade was owed a concurrent duty to explore and where necessary preserve her tribal interests before they might be lost. I believe she was, in the first instance, owed this duty by her counsel.
Under Welfare and Institutions Code[1] section 317, subdivision (c), the primary responsibility of a child's counsel is to advocate for the protection, safety and physical and emotional well-being of the child. However, counsel is expressly charged with an even broader duty. As section 317, subdivision (e), makes clear: "Counsel for the child shall be charged in general with the representation of the child's interests.... In addition counsel shall investigate the interests of the child beyond the scope of the juvenile proceeding and report to the court other interests of the child that may need to be protected by the institution of other administrative or judicial proceedings."
Consistent with section 317, subdivision (e), California Rules of Court,[2] rule 1438(g), provides that any interested party may advise the court of information regarding an interest or right of the child to be protected or pursued in other judicial or administrative forums. If the child's attorney or Court Appointed Special Advocate (CAPTA) guardian ad litem learns of such a right or interest, he or she is required to immediately notify the court and "seek instructions [on how to proceed]." (Rule 1438(g)(2).) "If the court determines that further action on behalf of the child is required to protect or pursue any interests or rights, the court must appoint an attorney for the child if the child is not already represented by counsel, and do one or all of the following: [¶] (A) Refer the matter to the appropriate agency for a further investigation, and require a report to the court within a reasonable time; [¶] (B) Authorize and direct the child's attorney to initiate and pursue the appropriate action; [¶] (C) Appoint a guardian ad litem for the child ...; or [¶] (D) take any other action to protect or pursue the interests and rights of the child." (Rule 1438(g)(3).)
"Nothing in the rules setting out the CAPTA guardian ad litem duties makes (the) duty to evaluate the child's circumstances exclusive or precludes others from evaluating those circumstances; rather, the guardian ad litem is only one among many invested with the duty to protect the child's best interests. (In re Josiah Z. (2005) 36 Cal.4th 664, 683, 31 Cal.Rptr.3d 472, 115 P.3d 1133, citing Berry v. Chaplin (1946) 74 Cal.App.2d 652, 657, 169 P.2d 442 ["It is the duty of the guardian and the *700 attorney to protect the rights of the minor, and it is the duty of the court to see that such rights are protected'].")
Counsel was aware at the time of the hearing that tribal rights and benefits existed for Jade but argued they were irrelevant to the proceedings. He argued that if tribal benefits were examined by the court, it would also have to hear evidence concerning the prospective adoptive family's financial ability. He expressly and repeatedly stated he considered the issue of Jade's benefits to be purely speculative and of no importance, and in fact he objected to virtually every attempt by mother's attorney to clarify what Jade's interests might be or what loss might occur if adoption were to be recommended and parental rights terminated. When the court suggested it was willing to accept a stipulation as to what benefits and rights existed, counsel refused.
Like Ms. Squires, counsel's error was in assuming Jade's interest in being adopted is inconsistent with and thus irrelevant to her tribal rights and benefits. They are not. In selecting one responsibility over the other, he placed himself in a position adverse to Jade.
Counsel's adverse position operated at two levels. First, his duty to advocate in the best interests of his client cannot in my opinion be accomplished if he does not completely know and incorporate into his opinion all of the factors important to making decisions in the minor's best interest. I believe the record should clearly reflect counsel for a minor has done so, especially where as here there are demonstrable benefits at risk. At a second level, as the majority itself notes, every tribe has a right to define its own membership. (See Santa Clara Pueblo v. Martinez (1978) 436 U.S. 49, 72, fn. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106.) We do not know if in fact the Tribe has rules, regulations and membership ordinances that would allow preservation of Jade's rights if they are timely and correctly filed with the Tribe before adoption. If the formal termination of parental rights alters any of Jade's rights, this should have been clarified and, if possible, actions should have been taken to protect those rights before the termination order was made. Counsel could have independently contacted the Tribe on Jade's behalf, sought a tribal resolution if necessary concerning her continued membership and rights, and if they were available he could have taken other appropriate action in a tribal forum to protect her. (See rule 1438(g)(3)(c); San Diego County Dept. of Social Services v. Superior Court (2005) 134 Cal.App.4th 761, 768, 36 Cal.Rptr.3d 294.)
The majority is content to infer that Jade's counsel properly performed his official duty under section 317, subdivision (e), to investigate other interests of the child beyond the scope of the juvenile proceeding. There is nothing in the record, however, either at the hearing or at any other time, from which such an inference can be drawn. If there was noticeand there wasthat Jade's rights and benefits might have been limited or eliminated by an order for adoption, for Jade's sake it was incumbent on counsel to place his efforts and findings on the record for the court before the order was made. He did not do so.
Rule 1438(g)(2) requires that once the court was apprised of the express tribal objection to adoption and loss of the substantial benefits to which Jade is apparently entitled, it should have either made a finding that there were no rights to be protected or, finding there were such rights, required her counsel fully investigate what those interests are and how further contacts with the Tribe prior to termination might preserve them even if *701 Jade were to be adopted. Rather, he too concluded the matter was irrelevant. In the face of counsel's clear unwillingness to pursue Jade's interests and report back to it, the court could have considered appointing someone else to investigate the protection of those interests. (See In re Celine R. (2003) 31 Cal.4th 45, 60-62, 1 Cal. Rptr.3d 432, 71 P.3d 787.) It did not fulfill the requirements imposed by rule 1438(g)(2).
While not directly related to the question of responsibilities Jade's counsel owed to her, I would note that requiring counsel and the court resolve an Indian child's rights may be important to a family interested in adoption. Here the prospective adoptive parents have not been told what benefits Jade might be entitled to. They are not blood relatives of Jade and are not descendants of any Indian tribe. They want to adopt her irrespective of her tribal rights. In other cases, however, especially where a family is intent on preserving a child's Indian heritage, the family members might consider a child's tribal rights of immense importance both financially and culturally. If they learn during the hearing process that tribal rights might be lost if adoption is recommended, they could theoretically request guardianship in lieu of adoption precisely in order to maintain the substantial rights of the minor. The ramifications of this option cannot be explained to families unless it is fully explored by counsel and the court.
Finally, requiring resolution of an Indian child's tribal rights at or prior to the permanency planning and placement hearing assures the Tribe will be adequately represented. Here, the Tribe was mistaken if it believed its position opposing adoption or that Jade's rights as an Indian child were being protected at the selection and permanency planning hearing. Nobody advocated on the Tribe's behalf. Nobody advocated Jade's tribal interests. My concern about tribal absence arises not only from the lack of witnesses available to respond to matters concerning tribal interests, it arises from testimony of witnesses like Ms. Squires, who in attempting to explain the very recent change in recommendation from guardianship to adoption, stated: "And if we fight the tribe, they will be able to appear in court or come to represent themselves." Of course if the Tribe has no genuine interest in representing itself or the child's tribal interests, it would be advantageous to have that position appear clearly on the record.

2. Because of the staleness of the information relevant to required ICWA findings, the referee should have permitted evidence of and made findings with respect to whether the continued custody of Jade would result in serious emotional or physical damage.

Mother contends here as she did below that the referee was required to make a finding beyond a reasonable doubt that her continued custody of Jade would likely result in serious emotional or physical damage to the child. On the facts of this case I believe she is correct.
When the termination of parental rights is sought in a case involving an Indian child, evidence, which includes expert testimony, must establish beyond a reasonable doubt that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. (25 U.S.C. § 1912(f)); rule 1439(m). There is authority for the proposition that this finding may be made at the hearing at which the selection and implementation hearing is set. Presumably, this is acceptable given the short length of time, a statutory 120 days, that usually exists between that hearing and *702 the selection and implementation hearing. However, the findings should be made again if the parent presents evidence of changed circumstances or demonstrates that the finding is stale due to the selection and implementation hearing being set substantially longer than the 120-day statutory period. (See In re Matthew Z. (2000) 80 Cal.App.4th 545, 554-555, 95 Cal.Rptr.2d 343; Seiser and Kumli, Cal. Juvenile Courts Practice and Procedure (2005) Jurisdiction, § 2.32A[5] p. 2-63.)
As mother notes in her brief to this court, and as the majority acknowledges, at the time of the March 7, 2005, permanency planning hearing, any findings and evidence as to the application of ICWA standards were for all practical purposes almost a year old. The declaration of Indian Social Services Representative Lydia Rochfort was even older. It was dated December 11, 2003, and was submitted to the court on December 17, 2003, as part of the status review.
At the conclusion of the proceedings below, the referee announced that the required ICWA findings were to be found in previous orders of the court and based on those minute orders, which he took judicial notice of, he believed ICWA had been complied with. For his part, counsel for Jade stated: "The whole issue of the I.C.W.A. in this particular case had no place."
There is no question that mother sought a ruling from the referee on whether beyond a reasonable doubt her continued custody of Jade met the statutory requirements. Nor is there any doubt that she sought to introduce evidence concerning whether this standard had been met. Unlike my colleagues, I have no confidence that Ms. Banegas, the individual responsible for responding to these issues, discussed mother's psychological or physical condition and how it might relate to Jade, with Ms. Rochfort or anyone else. The only references I find in the record to her contacts with anyone are at best truncated, lacking in substance or deemed irrelevant. For example, the following exchanges took place:
"Q. [Mother's counsel] "Did you do any studies yourself what would be the best interest of . . . Jade?
"[Minor's counsel] Objection. Vague.
"THE COURT: Sustained."
"Q. [Mother's counsel] Have you done any subsequent assessment?
"A. [Ms. Bangeas] Yes.
"Q. [Mother's counsel] When?
"A. [Ms. Banegas] I can't give you exact dates, but there have been conversations with the Indian Unit, with the therapist for Southern Indian Health, and also with  I'll just say those two.
"Q. [Mother's counsel] By you or someone else like Ms. Rochfort?
"A. [Ms. Banegas] By myself and others.
"Q. [Mother's counsel] Did you write any reports?
"A. [Ms. Banegas] No.
"Q. [Mother's counsel] Is there any report that you personally prepared or submitted that indicated that the continued custody of . . . Jade by the mother . . . would likely result in serious emotional or physical damage to the child?
"[Jade's counsel] Objection. Relevance.
"[Agency's counsel] Objection. Relevance.
"THE COURT: Sustained.
"Q. [Mother's counsel] Are you aware that Ms. Rochfort wrote a recommendation indicating such to county counsel or to the social welfare agency?
*703 "[Jade's Counsel] Objection. It's irrelevant.
"THE COURT: Sustained."
There is nothing in the record of the hearing that leads me to believe the evidentiary and burden of proof requirements of ICWA were complied with or even considered at the permanency planning hearing. Because of the staleness of the information, I believe they should have been. I cannot join my colleagues in inferring these issues were somehow considered when questioning on the most significant issue, that is, whether at the time of the hearing there was a likelihood of serious emotional or physical injury to Jade, was ruled irrelevant.
I would remand this case. Jade's counsel should be directed to clarify her rights and benefits or, if he is unwilling, another representative should be appointed to do so. I would also require termination of mother's parental interests be based upon current information.
NOTES
[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.
[2] Rule references are to California Rules of Court.
[3] Rule 1438(g) was relettered from rule 1438(f). (As amended, eff. Jan. 1, 2006.)
[4] Michael did not object to termination of parental rights and is not a party to this appeal.
[5] Kevin is not a party to this appeal. He was incarcerated in early 2004 and remained in prison during the proceedings. We discuss facts relating to him only to the extent relevant to Terri's appeal.
[6] The permanency hearing was originally scheduled in July 2004 but was taken off calendar after we issued a stay pending the outcome of Terri's and Kevin's writ petition. The trial court rescheduled the permanency hearing for September 2004, then November 2004, January 2005 and finally, February 2005. The scheduled September 2004 permanency hearing was postponed because the adoptions social worker was unavailable. All subsequent delays were at Terri's request. The permanency hearing was held over six days in February and March 2005.
[7] "The parents or guardians have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(A).)
[8] "A child 12 years of age or older objects to termination of parental rights." (§ 366.26, subd. (c)(1)(B).)
[9] "The child is placed in a residential treatment facility ...." (§ 366.26, subd. (c)(1)(C).)
[10] "The child is living with a relative or foster parent who is unable or unwilling to adopt the child because of exceptional circumstances, that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment and the removal of the child from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the child. This subparagraph does not apply to any child who is living with a nonrelative and who is either (i) under six years of age or (ii) a member of a sibling group where at least one child is under six years of age and the siblings are, or should be, permanently placed together." (§ 366.26(c)(1)(D).)
[11] "There would be substantial interference with a child's sibling relationship...." (§ 366.26(c)(1)(E).)
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] All rule references are to the California Rules of Court unless otherwise specified.