Filed 2/17/21  In re Layla S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| In re LAYLA S., a Person Coming Under the Juvenile Court Law. | C092165, C092506 |
| SUTTER COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.S. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. DPSQ190000053) |

S.S. (father) and T.J. (mother), parents of the minor, appeal from the juvenile court's order terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395; statutory section references that follow are found in the Welfare and Institutions Code.)  The parents contend the juvenile court failed to apply the correct standard of proof -- beyond a reasonable doubt -- at the selection and implementation hearing given that the minor is an Indian child within the meaning of the

1

Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). The Sutter County Department of Human Services (Department) argues the parents failed to object and therefore forfeited their claim on appeal.

We agree with the Department and affirm the juvenile court's orders.

## FACTS AND PROCEDURAL HISTORY

Given the limited nature of the claims on appeal, we dispense with a detailed recitation of the facts and procedural history in the case.

The Department filed a dependency petition on behalf of the newborn minor Layla S. pursuant to section 300, subdivisions (b) and (j), alleging the parents had substance abuse problems rendering them incapable of providing care and supervision to the minor, the minor tested positive at birth for methamphetamines and opiates after mother sought no prenatal care and used heroin and methamphetamines three days prior to the birth, father was previously discharged from a drug abuse treatment program after testing positive for opiates, father failed to engage in any other available programs to address his continued substance abuse, and the parents had recently had their parental rights over the minor's sibling C.S. terminated due to their continued drug abuse and failure to participate in reunification services. It is undisputed that the minor is an Indian child with the Cherokee Nation of Oklahoma.

On August 8, 2019, the court ordered the minor detained in out-of-home placement. Once the minor was discharged from the hospital, she was placed with the paternal grandparents who also provided care for the minor's sibling, C.S.

On August 29, 2019, the court sustained the first amended petition (the original petition having been amended to correct the minor's name) and adjudged the minor a dependent of the juvenile court.

On December 2, 2019, the Cherokee Nation filed a notice of intervention in the dependency proceedings. The attached declaration of the Cherokee Nation's child

welfare specialist, Nicole Allison, stated mother was an enrolled member in the Cherokee Nation and the minor was eligible for citizenship in the Cherokee Nation through the mother. Allison also declared that, in her opinion, the parents' continued custody of the minor was "likely to result in serious emotional or physical damage to the child" due to the parents' long history of substance abuse, the fact that the parents' previous receipt of services as to C.S. for the same issues did not prevent removal of the minor, and the parents were currently incarcerated and unable to care for the minor. Allison also noted the minor was placed with her sibling in the home of the grandparents and that the placement was ICWA compliant and the Cherokee Nation's preferred placement.

The disposition report filed December 17, 2019 stated that, due to their "out of control drug use" including heroin, methamphetamines, and marijuana, the parents remained homeless and unemployed, continued to lack an appropriate support network, and were not regularly drug testing or visiting the minor. The parents refused to participate in any intensive substance abuse treatment programs and resorted to the Salvation Army Depot to address their drug issues, refusing to accept that the Depot was insufficient to meet their needs or address the reasons for their continued substance abuse. The parents appeared to suffer from grief from the death of their oldest child, R.S., and had been unable to progress in their lives due to their grief. Despite having had "plenty of opportunities to participate in continued mental health treatment and counseling services," the parents failed to attend appointments. The Department provided the parents with information on substance abuse and mental health services. However, both parents were using heroin in combination with methamphetamines and marijuana and were not in a position to provide a safe environment for the minor. Although the Department arranged visitation, the parents were not regularly visiting with the minor. The Department recommended that the court bypass the parents for reunification services pursuant to section 361.5, subdivisions (b)(10), (b)(11), and (b)(13), and set the matter for a section 366.26 hearing.

3

An addendum report filed by the Department the same day included the declaration of Cherokee Nation representative Allison, who opined that the continued custody of the minor by the parents was likely to result in serious emotional or physical damage to the minor due to the parents' continued abuse of illegal substances and their failure to avail themselves of reunification services previously offered to them in the case of the minor's sibling, C.S. The report noted that Allison agreed, "that the Department made reasonable efforts to assist the parents and the parents have not participated in services in order to avoid the removal of [the minor]," and the Cherokee Nation agreed reunification services should not be offered to the parents due to their continued drug abuse and risk to the minor if placed in their care. In that regard, Allison's declaration stated in part that it was her opinion, "that active efforts were made by the state workers to provide remedial services, referral services and rehabilitative programs designed to prevent the breakup of this Indian family."

Neither parent was present at the disposition hearing on December 17, 2019. Cherokee Nation representative Allison appeared telephonically. The parents' respective attorneys informed the court they had had no contact with the parents and requested that the court follow the Department's recommendations. The court read and considered the Department's reports and adopted the recommended findings and orders. In particular, the court found, "by clear and convincing evidence that there is a substantial danger to the physical, health, safety, protection, or physical or emotional well-being of the child or will be if the child is returned home, and there is no reasonable alternative means to protect the child." The court further found that "continued placement of the child is necessary and appropriate" and "the agency has complied with the case plan by making reasonable efforts to make it possible for the child to safely return to the child's home and to complete whatever steps are necessary to finalize the permanent placement of the child." The court bypassed reunification services to the parents pursuant to section 361.5, subdivisions (b)(10), (b)(11), and (b)(13), and set the matter for a section 366.26 hearing.

4

In her second declaration filed on June 12, 2020, Cherokee Nation representative Allison again stated it was her opinion that the Department made "active efforts . . . to provide remedial services, referral services and rehabilitative programs designed to prevent the breakup of this Indian family." Allison opined that, based on her knowledge of Indian culture and her personal knowledge of the minor's case, "continued custody of the child by [the parents] is likely to result in serious emotional or physical damage to the child. Both parents have a long history of substance abuse that places [the minor] in danger if placed with them. [The minor] is currently placed in a relative placement with her sister and doing well. This home is willing to adopt her along with her sister." Allison recommended the court find that "beyond a reasonable doubt continued custody would likely result in serious emotional or physical damage to the child," that "active efforts were made by the department to prevent the breakup of an Indian family and those efforts should [*sic*] failed," and that the placement was in compliance with the ICWA placement preferences and was in the best interest of the minor. Finally, Allison recommended the court terminate parental rights and identify adoption as the appropriate permanent plan for the minor.

According to the section 366.26 report, father was residing in a sober living home and engaging in an outpatient substance abuse treatment program. Mother was in custody at the Sutter County jail. The Department recommended the court terminate parental rights, identify adoption as the permanent plan, and make a number of findings and orders including that "reasonable services had been provided to the parent designed to facilitate reunification of the family and to eliminate the circumstances which necessitated the detention of the child."

Father appeared by telephone for the section 366.26 hearing on June 16, 2020. Mother was not present. Both parents were represented by counsel. Cherokee Nation representative Allison appeared telephonically and stated her position as follows: "I'm in agreement with the Department's plan for termination and a plan of adoption. . . . I did

5

submit a declaration for the need of expert testimony and hope that had made that into the file.  We do believe that it is in the best interests of the [minor] for the parental rights of both parents to be terminated and the child be set free for adoption in a current relative placement."

The court adopted the recommended findings and orders, including the following:

"The Court found at the dispositional hearing that reasonable services had been provided to the parents designed to facilitate the reunification of the family and to eliminate the circumstances which necessitated the detention of the [minor].

"The Court does find the [minor's] placement is necessary and appropriate.

"The Court finds the agency has complied with the case plan by making reasonable efforts including whatever steps are necessary to finalize the permanent placement of the minor child.

"The Court finds by clear and convincing evidence that the permanent plan of adoption is appropriate.

"The Court finds by clear and convincing evidence that it is likely the [minor] will be adopted.  The likely date by which the permanent plan will be achieved is December the 15th, 2020.

"The Court finds the [minor] is an Indian child as defined by 25 U.S.C. 1903(4)." The court also adopted the recommended order that "[a]ll previous Orders, not herein modified, remain in full force and effect."  Finally, the court renewed and continued its prior orders, terminated parental rights, and ordered adoption as the permanent plan.

DISCUSSION

The parents contend the juvenile court failed to apply the correct standard of proof -- beyond a reasonable doubt -- when it found there was a likelihood of serious emotional or physical damage to the minor if returned to the parents' care and custody and terminated parental rights.  In addition, mother claims the court failed to consider the

Indian expert's opinion before terminating parental rights.  The Department argues the parents forfeited their claims by failing to raise them below and, in any event, any error was harmless.  We agree with the Department.

Where, as here, the information before the juvenile court is sufficient to show that the child is a member of a tribe, or is eligible for membership and is the child of a member, Rules of Court, rule 5.482(d)(2) requires compliance with all of the provisions of the ICWA.  (*In re L.B.* (2003) 110 Cal.App.4th 1420, 1427, superseded by rule on other grounds.)  These provisions include the requirement that, "No termination of parental rights may be ordered in [a dependency proceeding] in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."  (25 U.S.C. § 1912(f); see also § 366.26, subd. (c)(2)(B)(ii).)

It was never disputed that the minor is an Indian child within the meaning of the ICWA.  As such, before terminating parental rights, the juvenile court was required to make a determination, supported by evidence beyond a reasonable doubt, that the minor's continued custody by the parents was likely to result in serious emotional or physical damage to the minor.

At the December 17, 2019 disposition hearing, the court found "by clear and convincing evidence that there is a substantial danger to the physical, health, safety, protection, or physical or emotional well-being of the child or will be if the child is returned home, and there is no reasonable alternative means to protect the child."  That prior order was renewed and continued by the court at the June 2020 section 366.26 hearing.

It is undisputed that the juvenile court applied the clear and convincing standard of proof rather than the beyond a reasonable doubt standard when finding the minor was at risk of serious emotional or physical damage if returned to the parents' custody.

However, neither parent objected, at either the December 2019 hearing or the June 2020 hearing, to the court's use of the clear and convincing standard, or to the court's receipt and consideration of Cherokee Nation representative Allison's declaration in lieu of her testimony. " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method.' [Citation.]" (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98.) This is the general rule, because any other rule would allow a party to deliberately stand by in silence and permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 412 (*Riva M.*), citing *In re Christian J.* (1984) 155 Cal.App.3d 276, 279.) The forfeiture doctrine has been applied in dependency proceedings in a wide variety of contexts, including cases involving failure to require expert testimony and to make the required findings using the beyond a reasonable doubt standard as mandated by the ICWA. (See *Riva M.,* at p. 411.)

The forfeiture doctrine is applicable here. The minor was identified as an Indian child early on in the proceedings. The Cherokee Nation intervened in the case in early-December 2019, and representative Allison filed a declaration stating the parents' continued custody of the minor was "likely to result in serious emotional or physical damage to the child" due to the parents' long history of substance abuse, the fact that the parents' previous receipt of services as to C.S. for the same issues did not prevent removal of the minor, and the parents were currently incarcerated and unable to care for the minor. The notice of intervention and Allison's declaration were attached to the Department's addendum report filed the day of the disposition hearing. Allison filed a second declaration on June 12, 2020, repeating her previous opinion and recommending that the court "find that beyond a reasonable doubt continued custody would likely result in serious emotional or physical damage to the child." The Department's section 366.26

8

report referred the court to Allison's declaration in support of its recommendation to terminate parental rights. The court found continued custody would likely result in serious emotional or physical harm to the minor, but by clear and convincing evidence rather than beyond a reasonable doubt. By failing to object, however, the parents forfeited their claim on appeal. (*Riva M., supra,* 235 Cal.App.3d at p. 412.)

The parents' reliance on *In re Matthew Z.* (2000) 80 Cal.App.4th 545 (*Matthew Z.*) and *In re Barbara R.* (2006) 137 Cal.App.4th 941 (*Barbara R.*) does not compel us to decide otherwise. *Matthew Z.* and *Barbara R.* both discuss the proper timing of the requisite ICWA findings by the juvenile court, namely, that the agency made active efforts to provide services and rehabilitative programs and that the continued custody of the minor by the parents is likely to result in serious emotional or physical damage to the minor. Both agree that the required findings should be made at the final review hearing at which the section 366.26 hearing is set and need not be readdressed unless the parents present evidence of changed circumstances or show that the earlier findings were stale. (*Matthew Z., supra,* at pp. 554-555; *Barbara R., supra,* at pp. 949-950.) They provide no guidance on the issue presented here and do nothing to undermine the holding regarding forfeiture in *Riva M.*

In any event, we have the authority to decide whether the error in this matter was harmless. The question is whether there is a reasonable probability the outcome would have been different absent the court's error. (*Riva M., supra,* 235 Cal.App.3d at pp. 411-412.) We hold that there is not.

Section 366.26, subdivision (c)(2) provides: "The court shall not terminate parental rights if: . . . [¶] (B) In the case of an Indian child: [¶] . . . (ii) The court does not make a determination at the hearing terminating parental rights, supported by evidence beyond a reasonable doubt, including testimony of one or more 'qualified expert witnesses' as defined in Section 224.6, that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child."

9

The record provided the requisite level of evidence to support the court's determination. The declaration authored by Allison and referenced in the section 366.26 report stated, among other things, that Allison was an employee of the Cherokee Nation in the capacity of a Child Welfare Specialist; her duties included intervening on behalf of the minor to determine if the minor's best interests were being served by the agency, court, and extended family as to compliance with the federal ICWA; she was the specialist assigned to the minor, who was eligible for citizenship with the Cherokee Nation through mother; it was her opinion that "active efforts were made by the state workers to provide remedial services, referral services and rehabilitative programs designed to prevent the breakup of this Indian family"; mother tested positive for illegal substances during pregnancy with the minor and failed to obtain needed prenatal care which resulted in the minor being born premature and suffering from withdrawal symptoms; prior to removal of the minor, the Department had been providing active efforts to the parents with regard to the minor's older sibling, but those efforts failed and parental rights were terminated; and the parents had not yet corrected the conditions that led to removal of the minor's sibling. Allison also stated: "It is in my opinion, based upon my knowledge of Indian culture and my personal knowledge of this case, that continued custody of the child by [the parents] is likely to result in serious emotional or physical damage to the child. Both parents have a long history of substance abuse that places [the minor] in danger if placed with them. [The minor] is currently placed in a relative placement with her sister and doing well. This home is willing to adopt her along with her sister."

Allison's opinion that return of the minor to the parents would likely result in serious emotional or physical damage was supported by facts in the record regarding the parents' continuing problems. For example, prior to being bypassed for services, the parents' drug use was described as "out of control," as they continued to use heroin, methamphetamine, and marijuana. They remained homeless and unemployed and were

10

not regularly drug testing or visiting the minor. They refused to participate in any intensive substance abuse treatment programs and, despite having had "plenty of opportunities to participate in continued mental health treatment and counseling services," they failed to do so. By the time of the section 366.26 hearing, mother was in custody at the Sutter County jail and had not maintained visitation or occupied a parental role in the minor's life. Father reportedly moved to Tarzana to participate in an outpatient substance abuse treatment program while residing in a sober living home. While he maintained regular contact with the minor through video chats, he lived over 400 miles away and had not occupied a parental role with the minor on a daily basis. Notwithstanding that the parents received 12 months of reunification services in the sibling's case to address their continued substance abuse, they failed to engage in those services and continued to abuse drugs resulting in termination of their parental rights over the sibling.

The record also makes plain that the Cherokee Nation fully supported the minor's placement with her sister in the home of the grandparents, "an ICWA compliant placement and the preferred placement by the Cherokee Nation," and determined such placement was in the minor's best interest. We conclude the record contains substantial evidence to support the court's finding and therefore any error by the juvenile court was harmless.

The parents also claim the juvenile court erred when it failed to make a finding regarding the Department's "active efforts" as required by 25 U.S.C. section 1912(d), which provides: "Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." We are not persuaded.

11

Neither the ICWA nor its California counterpart, section 361.7, subdivision (b), defines "active efforts."  The standards for determining whether active efforts were made are "essentially undifferentiable" from those for assessing whether reasonable services under state law were provided.  (See *In re Michael G.* (1998) 63 Cal.App.4th 700, 712 [both the federal and state statutes are aimed at ensuring the provision of reasonable reunification services and preserving the family whenever possible, thus the "clear and convincing standard is also consistent with the ICWA's goals" and application of that standard to a 25 U.S.C. section 1912(d) analysis is proper]; accord *C.F. v. Superior Court* (2014) 230 Cal.App.4th 227, 238-239.)  Further, the parents provide no authority, and we are not aware of any, that requires that the juvenile court use the phrase "active efforts" rather than "reasonable efforts" in its findings regarding an agency's efforts to provide an Indian family with tools to prevent the breakup of the family.  Instead, 25 U.S.C. section 1912(d) requires only that the agency "satisfy the court that active efforts have been made."

Here, the juvenile court twice found that the Department made reasonable efforts to facilitate reunification of the family and eliminate the circumstances which necessitated the minor's detention, finding so first at the disposition hearing and then again at the section 366.26 hearing.  The court's findings were supported by the record.  For example, the Department provided the parents with reunification services in the case involving the minor's sibling, C.S., but the parents failed to engage and continued to abuse drugs.  As for the minor, the Department again provided the parents with substance abuse and mental health services and arranged visitation.  Again, the parents refused to participate and continued to abuse drugs and failed to visit the minor regularly or, eventually, at all.  The court's findings were consistent with the Department's recommendations as well as those made by Cherokee Nation representative Allison, who specifically recommended the court find the Department made "active efforts" with regard to providing services to the parents.  The parents do not challenge the sufficiency

of the court's findings, only that those findings did not expressly state that "active efforts" had been made without success.  We see nothing that compels us to elevate form over substance in this instance.  Thus, we find sufficient the court's findings that the Department made reasonable efforts to provide the parents with services designed to facilitate reunification of the family and eliminate the circumstances which necessitated the detention of the minor.

## DISPOSITION

The juvenile court's orders are affirmed.


_____

HULL, Acting P. J.



We concur:



_____

ROBIE, J.




_____

MURRAY, J.



13