NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| VICTOR B., | ) | |
| | ) | Supreme Court No. S-16237 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-00127 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 1601 – November 23, 2016 |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Ruth Botstein, Assistant Attorney General, Anchorage, and James E. Cantor, Acting Attorney General, Juneau, for Appellee. Anita L. Alves, Assistant Public Advocate, and Richard K. Allen, Public Advocate, Anchorage, for Guardian Ad Litem. Notice of nonparticipation filed by Pearl E. Pickett, Alaska Legal Services Corporation, Anchorage, for Intervenor Native Village of Goodnews Bay.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger and Carney, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

The superior court terminated a father's parental rights to his daughter, an Indian child, finding that he exposed her to domestic violence and caused her mental injury, that he neglected her, that he abandoned her, and that he failed to remedy these problems. The father challenges a number of the superior court's factual findings and also challenges a testifying expert witness's qualifications under the Indian Child Welfare Act (ICWA).

We reject the father's assertions of clear error and affirm the superior court's factual findings. We conclude that the expert witness was qualified under ICWA. We therefore affirm the superior court's termination of the father's parental rights.

## II. FACTS AND PROCEEDINGS

### A. Background

Victor B. and Charlotte E. have three children together: Violet (born in 2007), Nora (born in 2008), and Sasha (born in 2011).[1] This case involves Victor's parental rights to only the youngest child, Sasha. Sasha is an Indian child under ICWA because her mother is a member of the Native Village of Goodnews Bay and Sasha is eligible for membership in the tribe.[2]

Victor's family has a long history of involvement with the Office of Children's Services (OCS). OCS took custody of Violet and Nora shortly after birth because of Victor's and Charlotte's ongoing issues with substance abuse and domestic violence.[3] OCS later petitioned to terminate Victor's parental rights to Violet and Nora

---

[1]    We use pseudonyms to protect the privacy of the parties.

[2]    *See* 25 U.S.C. § 1903(4) (2012).

[3]    *Victor B. v. State, Dep't of Health & Soc. Servs., Office of Children's*
(continued...)

and the superior court held a termination trial in 2010.[4]

The superior court in that case noted Victor's "failure to recognize or remedy his role in his abusive relationship with [Charlotte]," his denial that either child had any special needs, and his "use[ of] violence as a means of power and control stemming from jealousy."[5] The superior court specifically found that Victor played a "prominent role in [his family's] dysfunction."[6] The superior court therefore terminated Victor's parental rights to Violet and Nora, and this court affirmed that ruling on appeal.[7]

## B.    Sasha's Birth And Continued Domestic Violence

Charlotte was pregnant with Sasha during the 2010 termination trial. Although Victor's rights were terminated, OCS worked with Charlotte on reunification with Violet and Nora. Charlotte made progress and OCS did not assume custody of Sasha when she was born in April 2011. The two older children were released from supervision and placed in Charlotte's custody later that year.[8]

Notwithstanding termination of his parental rights, Victor lived with Charlotte and all three children at various times between 2011 and 2014. Victor's relationship with Charlotte remained violent. The police responded to calls on three occasions in 2012 and 2013, and Charlotte twice received protective orders against Victor, one of which he pleaded guilty to violating.

---

[3](...continued)
*Servs.*, No. S-14179, 2011 WL 6004329, at *1 (Alaska Nov. 30, 2011).

[4]    *Id.*

[5]    *Id.* at *4.

[6]    *Id.*

[7]    *Id.* at *7.

[8]    *Id.* at *4.

OCS opened an in-home services case some time after the third domestic violence incident. By early 2014, Victor had left the household and he left Alaska shortly after.

## C.    OCS Assumes Custody

In June 2014 OCS transferred the case to Leslie Johnston, who had previously worked with the family from 2007 to 2011. Johnston prepared a family case plan, which set goals for Victor to understand his role in the domestic violence with Charlotte and the effect of domestic violence on children. Johnston tried to contact Victor over the summer but could not reach him until early September. At that time, Victor was living in Georgia and had been baptized and completed a truck driving program. When they talked, Victor told her he had not participated in any domestic violence courses.

Later that month, OCS held an emergency team decision meeting after Charlotte was arrested for assault while intoxicated. Victor attended by phone and said he was in Florida. In November 2014 the children were placed with Sheila L., the therapeutic foster mother who had taken care of the two older children during the earlier case. The children were still living with Sheila when the trial was held in January 2016.

## D.    Victor's Conduct Up To Trial

During the second half of 2014 and throughout 2015, Victor participated in team meetings by telephone, but he fell increasingly out of contact with Sasha and failed to complete important elements of his case plan, even after OCS filed a petition for termination in July 2015.

Victor called Sasha irregularly and, according to Sheila, stopped initiating calls after Sasha's birthday in April 2015. Victor also spoke with his daughters when Charlotte initiated the calls and added him to the line; Sheila thought the last such call was in October 2015. Victor sent a text message in November 2015 to wish the girls a

happy Thanksgiving, but he did not call or text that Christmas. Johnston offered to fly Victor to Alaska for a visit with Sasha on several occasions, but Victor declined these opportunities.

Victor also provided minimal financial support for Sasha. Sheila testified that she received money from him only once and that he did not send anything for Sasha's day-to-day needs, for Sasha's birthday in April, or for Christmas in 2015.

In the spring of 2015, Victor told Johnston that he was looking into domestic violence classes, but Johnston was unable to confirm his enrollment at the two agencies he named. In November 2015 Victor told Johnston that he had completed anger management and parenting classes through a third agency. But according to that agency, Victor had failed to complete its parenting course and had not enrolled in its anger management course. Victor did not enroll in an anger management course until January 22, 2016, less than a week before the termination trial began.

OCS filed a petition for termination of Victor's parental rights to Sasha. The petition alleged that he had not addressed any of the issues that had led to the termination of his rights to Violet and Nora, that he had not maintained regular visitation with Sasha, and that he could not provide a safe environment. Accordingly, OCS asked the court to find that Sasha was in need of aid because of abandonment, substantial physical harm, sexual abuse, mental injury, neglect, and parental substance abuse, and to terminate Victor's parental rights on these bases.

The superior court conducted Victor's termination trial on January 25, January 26, and February 16, 2016. Victor was scheduled to have three supervised visitations while he was in Alaska during the first two days of the trial, but he missed the first visit, left the second visit early, and ignored the girls for most of the third visit.

**E.  Termination Trial**

OCS presented eight witnesses at trial.  Four police officers testified about the 2012 and 2013 domestic violence incidents between Victor and Charlotte; OCS social workers testified about their work with the family and the events leading up to trial; foster mother Sheila testified about the children and Victor's contact with them; and Philip Kaufman testified as an expert in child welfare and domestic violence.  Victor testified on his own behalf.

The superior court made oral findings on the record after the close of trial, granting the petition to terminate Victor's parental rights and observing that "[t]his isn't a close call."  It found by clear and convincing evidence that Sasha was a child in need of aid under AS 47.10.011(1) (abandonment), (8) (domestic violence), and (9) (neglect), and that Victor had failed to remedy the conduct or conditions placing Sasha in need of aid.[9]  As required by ICWA, the superior court found beyond a reasonable doubt that returning Sasha to Victor's care would place her at substantial risk of harm, and by clear and convincing evidence that OCS had made active efforts to reunify the family.[10]  Finally, it also found by a preponderance of the evidence that returning Sasha to Victor's care would not be in her best interests.[11]

Victor now appeals the order terminating his parental rights.

---

[9]  *See* AS 47.10.088(a)(2).

[10]  *See* 25 U.S.C. § 1912(d), (f).

[11]  *See* AS 47.10.088(b).

## III.   STANDARD OF REVIEW

We review a superior court's factual findings for clear error.[12]   Factual findings are clearly erroneous "when a review of the entire record leaves us with 'a definite and firm conviction . . . that a mistake has been made.' "[13]   "Whether expert testimony presented at trial satisfies the requirements of ICWA is a legal question that we review de novo."[14]

## IV.   DISCUSSION

On appeal, Victor argues that the court erred by finding that he had not remedied the domestic violence and abandonment issues that put Sasha at substantial risk of harm.  Victor also challenges the qualifications of Kaufman as an expert witness under ICWA, and he further argues that even if Kaufman was a qualified expert witness, the trial court clearly erred in finding that Sasha was likely to be harmed in Victor's care. For the reasons explained below, we reject Victor's arguments and affirm the superior court's termination of his parental rights.

---

[12]     *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 502 (Alaska 2009); *see also Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103-04 (Alaska 2011) ("As we have noted, whether a parent has 'remedied the conduct or conditions . . . that place the child at substantial risk' and 'whether returning the child to the parent would place the child at substantial risk of physical or mental injury' are factual determinations best made by a trial court . . . , not legal determinations to which this court may apply its independent judgment.").

[13]     *Co v. Matson*, 313 P.3d 521, 524 (Alaska 2013) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)); *see also Link v. Patrick*, 367 P.2d 157, 159 (Alaska 1961).

[14]     *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 962 (Alaska 2013).

**A.** **The Trial Court Did Not Err By Finding That Victor Had Not Remedied His Conduct.**

**1.** **Domestic violence**

Alaska Statute 47.10.011(8) provides that a child is in need of aid if "conduct or conditions created by the parent . . . have . . . resulted in mental injury to the child." Alaska Statute 47.10.088(a)(2) allows involuntary termination of parental rights when the superior court finds by clear and convincing evidence that "the parent . . . has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury."

The superior court found that Sasha was a child in need of aid because her exposure to domestic violence had resulted in mental injury. The superior court also found that Victor had failed to remedy the conduct or conditions placing Sasha in need of aid because he had failed to change or even recognize his violent behavior after nine years of OCS involvement in his children's lives. The superior court focused on Victor's insistence on "blam[ing] everyone else for his problems" and his failure to meaningfully participate in anger management or domestic violence classes.

These findings are supported by the record.

Victor's history of domestic violence is well documented. He had two convictions related to violence against Charlotte: one in 2007 for assault, and one in 2012 for violating the protective order. After the 2010 termination trial, the superior court specifically found that Victor "use[d] violence as a means of power and control stemming from jealousy."[15] Police officers testified to three incidents in which Charlotte claimed that Victor had been violent, and one officer testified as to his concern that

---

[15] *See Victor B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-14179, 2011 WL 6004329, at *4 (Alaska Nov. 30, 2011).

Charlotte had been the victim of domestic violence. The children were at home during all of these incidents. Kaufman, an expert in child welfare and domestic violence, testified about the potential trauma and resulting physical and mental health problems for children who witness domestic violence.

Victor's failure to remedy this conduct was also established at trial. Johnston testified that she had seen no positive changes in Victor since the first CINA case. She observed that he had made no changes in how he interacted with people, remaining "uncooperative and disrespectful and verbally combative" and engaging in "all of the same behaviors that we were seeing in the previous case with concerns [about] anger management." The evidence also showed that Victor had not participated in any classes designed to help him with his violent behavior. Kaufman testified that he had little doubt that Victor would continue to behave violently around Sasha if she were returned to his care.

Given this evidence, the superior court's findings that Victor exposed Sasha to domestic violence, that this conduct resulted in mental injury, and that Victor had not remedied his conduct were not clearly erroneous.

### 2. Abandonment

Alaska Statute 47.10.011(1) provides that a child is in need of aid if "a parent or guardian has abandoned the child." Abandonment is found "if a parent or guardian has shown a conscious disregard of parental responsibilities toward the child by failing to provide reasonable support, maintain regular contact, or provide normal supervision, considering the child's age and need for care by an adult."[16]

The superior court found that Victor had abandoned Sasha in four separate ways: (1) under AS 47.10.013(a)(2) by making only minimal efforts to support and

---

[16] AS 47.10.013(a).

communicate with Sasha; (2) under AS 47.10.013(a)(3) by failing to maintain regular visitation with Sasha for a period of six months; (3) under AS 47.10.013(a)(4) by failing to participate in a plan to reunite himself with Sasha; and (4) under the two-part test we have previously articulated, finding (a) parental conduct showing a "willful disregard" of parental obligations leading to (b) the destruction of the parent-child relationship.[17] The superior court also found that Victor had failed to remedy this abandonment by the time of trial.

Victor challenges these findings as clearly erroneous. We disagree.

According to Sasha's foster mother, the last time Victor initiated a call with Sasha was in April 2015, over nine months before trial, and the last time he spoke on the telephone with Sasha was in October 2015, when Charlotte included him on a three-way call. Victor showed little interest in visiting Sasha, taking no action on OCS's repeated offers to fly him to Alaska for a visit, missing his first scheduled visit in almost two years, and hardly interacting with Sasha when he saw her in person while the trial was under way. Victor also made minimal progress on his case plan, failing to complete any parenting classes and failing to enroll in an anger management class until the week before trial began. The court noted, and we agree, that this was "too little too late."

Based on this evidence, the superior court's finding that Victor abandoned Sasha and did not remedy that abandonment was not clearly erroneous.[18]

---

[17]     *Sean B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* 251 P.3d 330, 335-36 (Alaska 2011).

[18]     The superior court also found that Victor had neglected Sasha under AS 47.10.011(9) and AS 47.10.014. The superior court noted that this finding was based on the same facts that established abandonment. Victor has not specifically challenged the neglect finding on appeal, but we read Victor's challenge to the abandonment finding as also challenging the superior court's neglect finding, because these findings were
(continued...)

**B.** **The Trial Court Did Not Err By Finding Beyond A Reasonable Doubt That Sasha Would Be Seriously Harmed If Returned To Victor's Care.**

In a termination proceeding involving an Indian child, the court may not terminate a parent's rights unless it finds "evidence beyond a reasonable doubt, *including testimony of qualified expert witnesses*, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."[19] This requirement was intended "to keep Native children from being separated from their families solely on the basis of testimony from social workers who lacked the familiarity with Native culture necessary to distinguish between 'the cultural and social standards prevailing in Indian communities and families' and actual abuse or neglect."[20]

Here, the court found that Kaufman was a qualified expert witness, and it further found, based in part on Kaufman's testimony, that continued custody by Victor was likely to result in serious emotional or physical damage to Sasha. Victor argues that Kaufman was not a qualified expert witness because he lacked knowledge of Sasha's tribe and did not have personal contact with Sasha. Victor further argues that the superior court clearly erred in finding that continued custody by Victor was likely to result in serious emotional or physical damage to Sasha. We disagree.

---

[18](...continued)
based on the same evidence. We reach the same conclusion: the superior court's factual findings as to neglect were not clearly erroneous.

[19]    25 U.S.C. § 1912(f) (emphasis added).

[20]    *L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 951 (Alaska 2000) (quoting 25 U.S.C. § 1901(5)).

### 1. Kaufman was a qualified expert under ICWA.

ICWA does not define the term "qualified expert witness."[21] We have made clear that "more is required of an ICWA expert than simply being 'qualified' as some kind of expert under the rules of evidence."[22] But we have also held that "[w]hen the basis for termination is unrelated to Native culture and society and when any lack of familiarity with cultural mores will not influence the termination decision or implicate cultural bias in the termination proceeding, the qualifications of an expert . . . need not include familiarity with Native culture."[23]

We have declined to approach this question categorically, instead reviewing the facts of each case to determine whether cultural mores were implicated. We have found that familiarity with a child's tribe was not necessary in a variety of situations,

---

[21] *See* 25 U.S.C. § 1903.

[22] *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 504 (Alaska 2009).

[23] *Id.* at 503. This court has previously observed that the federal guidelines on ICWA are not binding, but provide useful guidance in interpreting the statute. *Id.* at 504. The Bureau of Indian Affairs (BIA) published new guidelines in 2015. Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146 (Feb. 25, 2015). Earlier this year we declined to consider whether these new guidelines should lead to a change in Alaska law, noting that the BIA was in the process of adopting ICWA regulations and that "it would be premature for this court to consider overturning Alaska law on ICWA experts before knowing . . . the BIA's final word." *Kent K. v. State, Dep't of Health & Social Servs.*, No. S-15708, 2016 WL 483254, at *5 (Alaska Feb. 3, 2016). The BIA has since promulgated those regulations, but they do not take effect until December 12, 2016. Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,876 (June 14, 2016). We therefore decide this case based on our existing precedent and without reference to the new guidelines or regulations.

including those in which termination was based on parental substance abuse,[24] domestic violence,[25] or neglect.[26]

Here, cultural mores were not implicated in the termination of Victor's parental rights. Termination was based primarily on Victor's domestic violence, his refusal to recognize or remedy his violent tendencies, and his failure to support or maintain a relationship with Sasha after leaving Alaska. Kaufman testified at length about the potential trauma for children who witness domestic violence, as well as the potential trauma for children returning to the care of a parent with whom they no longer have a relationship. No party suggested at trial — or on appeal — that the potential for trauma was different for Sasha due to cultural child-rearing practices. And Sasha's diagnoses of post-traumatic stress disorder and reactive attachment disorder demonstrate that she has already been traumatized by Victor's conduct. We therefore hold that Kaufman's lack of knowledge about Sasha's tribe did not disqualify him as an expert witness under ICWA.

We also reject Victor's argument that Kaufman's testimony did not satisfy ICWA requirements because he did not have contact with Sasha. An in-person interview is not required in every case so long as the ICWA expert's opinion is "based on the

---

[24]    *See Payton S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 349 P.3d 162, 172 (Alaska 2015); *Thea G. v. State, Dep't of Health & Soc. Servs, Office of Children's Servs.*, 291 P.3d 957, 964 (Alaska 2013).

[25]    *See Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1110-11 (Alaska 2011).

[26]    *L.G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 14 P.3d 946, 952 (Alaska 2000).

particular facts and issues of the case."[27] Kaufman reviewed numerous OCS documents, court documents, police reports, and records of services accessed by the family. And Kaufman specifically grounded his report and testimony in those documents, describing specific adverse experiences suffered by Sasha and observing the continuity of Victor's behavior over nine years as demonstrated in interactions with OCS, the police, and the courts. We therefore conclude that Kaufman's testimony was properly "based on the particular facts and issues of the case."[28]

### 2. The superior court's factual finding was not clearly erroneous.

Finally, Victor argues that the superior court clearly erred when it found beyond a reasonable doubt that Sasha would likely be seriously harmed if returned to Victor's care. The superior court reached this conclusion based on Kaufman's testimony and the other evidence presented at trial. The superior court noted that Victor "willfully, repeatedly[,] and without interruption[] demonstrated that he is not willing to be a parent, except on his terms," and cited Kaufman's testimony about the harm that children suffer from exposure to domestic violence and abandonment.

We have already reviewed Kaufman's testimony and the other evidence presented in this case. Based on that evidence, we conclude that the superior court's finding was supported by the record and was not clearly erroneous.

## V. CONCLUSION

For the reasons explained above, we AFFIRM the termination of Victor's parental rights.

---

[27]     *C.J. v. State, Dep't of Health & Soc. Servs.,* 18 P.3d 1214, 1218 (Alaska 2001). *See also Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1020 (Alaska 2009).

[28]     *C.J.*, 18 P.3d at 1218.